IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

ROBERT THAD BUCK                                                PLAINTIFF

v.                                                         No. 4:25CV10-DAS

LEFLORE COUNTY SHERIFF'S DEPT., ET AL.                         DEFENDANTS

### ORDER FOR THE PLAINTIFF TO *SHOW CAUSE* WHY ALL OF HIS CLAIMS, EXCEPT USE OF EXCESSIVE FORCE, SHOULD NOT BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED

This matter comes before the court on the plaintiff's complaint filed under 42 U.S.C. § 1983. The plaintiff alleges that the defendants: (1) used excessive force against him, (2) took his property without due process, (3) arrested him and revoked his post-release supervision without probable cause, (4) exposed him to unconstitutionally harsh conditions of confinement, and (5) denied him adequate medical care.

For the reasons set forth below, within 21 days, the plaintiff must show cause why the following allegations should not be dismissed with prejudice for failure to state a valid § 1983 claim: the taking of his property without due process of law, his arrest and the revocation of his post-release supervision without probable cause, exposure to unconstitutionally harsh general conditions of confinement, and denial of adequate medical care. In addition, the plaintiff must show cause, within 21 days, why the following defendants should not be dismissed with prejudice, as it appears that their involvement was limited to the four claims which it appears should be dismissed: Tyrone Banks, Michael Baldwin, and VitalCore.

### Taking of Property Without Due Process of Law

It appears that the plaintiff's claim regarding the taking of property (a motor vehicle) should

be dismissed with prejudice for failure to state a claim upon which relief could be granted. Buck alleges that on October 25, 2024, Office Michael Baldwin (with the Leflore County Sheriff's Department) arrested him pursuant to a Mississippi Department of Corrections (MDOC) warrant. Doc. 27, p. 7 (Amended Complaint). Baldwin placed an investigative hold on Buck and detained him for 33 days (until November 26, 2024), when he was moved to Harrison County. *Id.*

Baldwin also seized the vehicle of Buck's girlfriend Stacy, Griffith (which Baldwin suspected might have been purchased with stolen money) and placed a 60-day hold on it. *Id.* Buck was charged with grand larceny for allegedly stealing the money to purchase the vehicle. *Id.* This arrest was used as an infraction to show that Buck had violated the terms of his post-release supervision, which was revoked.[1] *Id.* Buck's girlfriend tried to prove her ownership of the vehicle several times, but the title was in the glove compartment of the vehicle, which remained in impound. *Id.* Baldwin eventually told Buck's girlfriend that she could retrieve the vehicle, but that she must first pay $3,500 for towing and storage. *Id.*

As an initial matter, Buck alleges that the impounded vehicle does not belong to him; it belongs, instead, to his girlfriend.[2] Doc. 27, p. 7. As such, he has no standing to assert a claim regarding the taking of her vehicle, and it appears that this allegation must be dismissed for failure to state a claim upon which relief could be granted.

The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy.

---

[1] It appears that, before his arrest, Buck already faced an allegation that he had violated the terms of his parole, as his October 25, 2024, arrest was pursuant to an "MDOC warrant." Doc. 27, p. 7. He has not explained the factual basis to support that warrant.

[2] In various places throughout his pleadings, Buck refers to "my girlfriend's car" or "my car." Doc. 27, p. 7. However, Buck's girlfriend (Stacy Griffith) produced bank statements in an attempt to show that she purchased the vehicle with her own funds. *Id.* As such, it appears that Ms. Griffith actually owned the vehicle.

*See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Parratt/Hudson doctrine, provides "that no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct." *Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, the initial question before the court as to the plaintiff's claim regarding the taking of his property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"), which became effective on April 1, 1993. As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012). The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85

So.3d 307 (Miss.App.,2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in *Johnson* are legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's drinking mug and disposed of it. *Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money. *Id.* The mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id.* The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for the fair value of the mug. *Id.*

Those facts mirror the facts in the present case. The vehicle was purchased, confiscated, and withheld – requiring a fee to release it.[3] Doc. 27, p. 7. As such, to the extent that the plaintiff might have a claim for the taking of the vehicle, he has an adequate remedy under state law, and his allegations regarding the taking of his property without due process of law must be dismissed.[4]

### Arrest and Revocation Without Probable Cause

The plaintiff alleges that the defendants arrested him and revokes his post-release supervision without probable cause.

---

[3] It is not clear whether Ms. Griffith ever recovered the vehicle.

[4] Again, if the vehicle actually belonged to Ms. Griffith, then the plaintiff has no standing to challenge the taking.

**Arrest**

The plaintiff alleges that Deputy Michael Baldwin arrested him without probable cause. A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment. *See Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Hogan*, 722 F.3d at 731 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)).

The court must apply an objective standard: Probable cause existed if the officer was aware of facts supporting a reasonable belief that an offense was being, or had been, committed, regardless of whether the officer ultimately charged the arrestee with that specific offense. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Devenpeck v. Alford,* 543 U.S. 146, 153–54, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979).

A person arrested pursuant to a warrant issued by a magistrate on a showing of probable cause is not entitled to a separate judicial determination that probable cause exists to detain him prior to trial. *Id.* at 144. An officer conducting a warrantless arrest may establish probable cause based upon facts known to him at the time, even if those facts involved a separate charge not used to support the suspect's arrest. *Devenpeck, supra*, at 152–53. Thus, if a court determines that probable cause did not exist to support a suspect's warrantless arrest on one charge, the arrest is

- 5 -

nonetheless valid if, at the time, the arresting officer had knowledge of facts supporting the suspect's arrest for a different crime. *Id*. at 153.

**Initial Arrest of October 25, 2024**

In this case, the plaintiff alleges that, while he was on post-release supervision (PRS), he was arrested pursuant to "a[n] MDOC warrant," which, by itself, established probable cause for his initial arrest on October 25, 2024.[5]  Doc. 13, p. 3 (post-release supervision); Doc. 27, p. 7 (warrant); *see Baker*, 443 U.S. at 144.  Indeed, the warrant represents not merely probable cause, but a *final determination by the parole authority* (by a preponderance of the evidence) that Buck had violated the terms of his PRS; thus, under Mississippi law, he was "deemed a fugitive from justice."  *See* Miss. Code Ann. § 47-7-27(3); *Felix v. Mississippi,* 73 So.3d 1194, 1196 (¶ 8) (Miss.Ct.App. 2011) (preponderance standard for revocation of post-release supervision).  Buck has not challenged the validity of the MDOC warrant, and he is not entitled to a separate probable cause finding to support his arrest pursuant to that warrant.  *See Baker, supra*.  Hence, as Buck was arrested pursuant to a valid MDOC warrant, it appears that probable cause existed to arrest him on October 25, 2024, regardless of the evidence of the new violation (theft of a boat motor).

**Revocation of Post-Release Supervision**

In addition, the plaintiff alleges that his post-release supervision was revoked without probable cause regarding a separate incident (theft of a boat motor).[6]  During Buck's hearing regarding revocation of post-release supervision, Baldwin provided evidence that Buck stole a boat motor.  Baldwin stated that he saw a video of the plaintiff "robbing a store," a reference to

---

[5] The nature of the PRS violation giving rise to the MDOC warrant is unclear.

[6] As discussed above, the existing MDOC warrant was sufficient to support revocation of Buck's parole – even without proof that he had stolen a boat motor.

the theft of a boat motor. Doc. 4, p. 1. As to the theft, the plaintiff acknowledges the evidence presented at the hearing: (1) a witness provided law enforcement with a sworn statement that the plaintiff was trying to sell a stolen boat motor; (2) a witness provided a statement that the motor was worth $1,500; and (3) law enforcement presented a video showing the plaintiff walking down a path to the store from which the motor was allegedly stolen (and the plaintiff acknowledged in his pleading that he used the path in his neighborhood to "go to the store.") Doc. 13, p. 3.

Certainly, this information constitutes "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," using the preponderance standard. *Hogan*, 722 F.3d at 731 (definition of elements of probable cause); *Felix, supra*, at 1196 (preponderance standard). Though the plaintiff challenges the credibility of the witnesses regarding his having a stolen motor for sale, as well as the value of the motor, it appears that enough proof existed to establish probable cause, by a preponderance of the evidence, that Buck violated the terms of his PRS by stealing the boat motor (in addition to the earlier finding probable cause to support the MDOC warrant). Doc. 13, p. 3.

## General Conditions of Confinement

The plaintiff alleges that the defendants housed him in unconstitutionally harsh conditions: (1) turning off the water in his cell (allegedly to prevent him from using water from the toilet or sink to flood his cell); and (2) providing meals and drinks only when he was awake at mealtime (such that he only had five cups of water, some juice, and some meals) over a three-day period). Doc. 8. Buck has not alleged that prison officials denied him food or drink while

serving his meals when he was awake.  However, he acknowledges that he does not remember much from that time, as he was allegedly recovering from a drug overdose.  Doc. 5.

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience."  *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted).  "Inmates cannot expect the amenities, conveniences, and services of a good hotel."  *Id.* at 849 n.5 (citation omitted).  Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ."  *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation.  Buck has not alleged any harm, either from the lack of running water to his cell – or from receiving food and drink only when he was awake a mealtime.  The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time.  *See Woods*, 51 F.3d at 581.  Thus, it appears that this allegation should be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Denial of Adequate Medical Care

The plaintiff alleges that, after his arrest pursuant to an MDOC warrant on October 25, 2024, he told Officer Austin Moore that he had ingested a large amount of methamphetamine and needed medical attention.  Doc. 27, p. 6.  According to the plaintiff, Moore took him directly to the Leflore County Jail, rather than the hospital.  *Id.*  In addition, the plaintiff alleges that he received no medical

attention for the next five days.  *Id.*  It is unclear what medical attention he received after that; it is also unclear whether he submitted a medical request form seeking medical treatment during that time.

The plaintiff also alleges that on October 28, 2024, he told Officer Melvin Harvey that he was suicidal; the plaintiff then attempted to hang himself with his bedsheet.  *Id.*  Harvey then entered the plaintiff's cell and sprayed him in the face with chemical agent.  *Id.*  Jail staff did not provide the plaintiff the means to clean the chemical agent from his skin until the next day.  *Id.*  The plaintiff has not alleged that he attempted suicide or harmed himself after being sprayed with a chemical agent.

The plaintiff also alleges, generally, that defendant medical provider VitalCore did not attend to his medical needs after his alleged choking assault by Officer Moore and spraying with chemical agent by Officer Hervey.  *Id.*  He has not alleged that he completed and submitted a Medical Request Form seeking treatment.

To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ."  *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992).  The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Under this standard, to establish a state actor's liability under 42 U.S.C. § 1983, a plaintiff must allege facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 838.  Only in exceptional circumstances may a court infer knowledge of substantial

risk of serious harm by its obviousness. *Id*.

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

In this case, the plaintiff has alleged only *de minimis* physical harm from denial of medical attention regarding any of his allegations: ingestion of illegal drugs, leaving chemical agent on him for a day, and assault by choking. He alleges only that he suffered "pain in [his] neck" and "headaches" from the choking assault. Doc. 6, p. 1. He alleges no injury from his alleged ingestion of

- 10 -

illegal drugs, the spraying of chemical agent, or ignoring his statement that he was suicidal.[7]

Injuries such as a bloody nose, abrasions, and bruised, red skin are *de minimis*. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (affirming district court's dismissal of plaintiff's claim for excessive force because injury consisting of "a sore, bruised ear lasting for three days" was *de minimis); Wyatt v. Shaw,* No. 95-40030, 1995 WL 450120, at *1 (5th Cir. June 30, 1995) (upholding dismissal of prisoner's excessive force claim because prisoner "suffered only temporary, *de minimis* injuries as a result of his exposure to the residual effects of the chemical agent"); *Hodge v. Williams,* Civil Action No. 4:08–CV–330–Y, 2009 WL 111565, at *3 (N.D. Tex. Jan. 16, 2009) (finding as *de minimis* inmate's claimed injuries of "cuts on his hand," a cut inside his lip, and **a sore neck**); *Lee v. Wilson*, 237 F. App'x 965, 966 (5th Cir. 2007) (lip injury and **headache** were *de minimis* injuries, precluding recovery under 42 U.S.C. § 1983).

The plaintiff also alleges that he "sustained mental injuries" he "will never get over," such as "nightmares." Doc. 27, p. 8. Mental and emotional injuries, by themselves, do not rise to the level of "substantial harm" sufficient to support a § 1983 claim for denial of adequate medical care, regardless of the nature of the claim. *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e) (*pro se* prisoner plaintiff in § 1983 case must allege more than *de minimis* physical injury to recover compensatory damages).[8] For these reasons, the plaintiff may not recover compensatory damages for

---

[7] The court notes that, in Buck's original complaint [1] (superseded by his amended complaint [27]) the defendants left him "naked in a turtle suit" multiple times. Doc. 1, p. 5. The court recalls from previous prisoner suits that another name for a "turtle suit" is "anti-suicide smock." Such clothing prevents an inmate from using his civilian clothes to fashion a noose or other device to attempt suicide. *See, e.g. Murshid v. Sollie*, No. 3:19-CV-935-FKB, 2022 WL 4962609, at *2 (S.D. Miss. Sept. 12, 2022) ("turtle suit" used when inmate was placed on suicide watch.) Hence, according to the plaintiff, himself, the defendants took at least some preventative action after his threats of suicide.

[8] Though the plaintiff has requested that the defendants be "punished," he has not requested punitive damages, only "monetary comp[en]sation." Doc. 27, p. 8.

his alleged "mental injuries."

Ultimately, the plaintiff's alleged injuries of headaches and a sore neck are *de minimis*; as such, it appears that his claim regarding denial of medical care must be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Conclusion

It appears that the plaintiff's claims regarding: (1) the *taking of his property*, (2) *arrest and revocation of post-release supervision without due process*, (3) *unconstitutionally harsh general conditions of confinement*, and (4) *denial of adequate medical care* do not state valid claims under 42 U.S.C. § 1983.

The alleged involvement of defendants *Tyrone Banks*, *Michael Baldwin*, and *VitalCore* in this case is limited to the four claims which appear to require dismissal. As such, it appears that these defendants should be dismissed with prejudice from this case for failure to state a valid claim against them under 42 U.S.C. § 1983.

As such, the plaintiff is **ORDERED** to **SHOW CAUSE** why the following allegations and defendants should not be dismissed with prejudice for failure to state a claim upon which relief could be granted:

(1)      the plaintiff's claims regarding: (1) the *taking of his property*, (2) *arrest and revocation of post-release supervision without due process*, (3) *unconstitutionally harsh general conditions of confinement*, and (4) *denial of adequate medical care*; and

(2)      defendants *Tyrone Banks*, *Michael Baldwin*, and *VitalCore*.

However, the plaintiff's allegations of *excessive force* against defendants *Austin Moore* (choking the plaintiff while he was handcuffed) and *Melvin Hervey* (spraying the plaintiff in the face with chemical agent as he attempted to hang himself) will proceed.

*The deadline for the plaintiff to respond is 21 days from the date of this order.*

**SO ORDERED**, this, the 18th day of November, 2025.

/s/   David A. Sanders
UNITED STATES MAGISTRATE JUDGE